**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 21-cv-01973-CMA

ANGELO EMILIO MONTOYA,

      Petitioner,

v.

JEFF LONG, Warden of Sterling Correctional Facility,
DEAN WILLIAMS, Executive Director of the Colorado Department of Corrections, and
PHILIP J. WEISER, Attorney General for the State of Colorado,

      Respondents.

---

**ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS**

---

      A Colorado jury found petitioner Angelo Emilio Montoya guilty of attempted first-degree murder (extreme indifference), reckless manslaughter, criminally negligent homicide, and accessory to crime. He brings this habeas corpus action under 28 U.S.C. § 2254 to collaterally challenge the convictions. Petitioner's habeas application initially asserted four claims, with the third claim having two subparts. The Court dismissed claims 3(a) and 4 on procedural grounds. (*See* Doc. # 20). What remains are claims 1, 2, and 3(b). For the reasons below, the Court rejects each remaining claim on the merits and denies the habeas application.

## I.    STANDARDS OF REVIEW

      "The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) requires a prisoner who challenges (in a federal habeas court) a matter 'adjudicated on the merits

in State court' to show that the relevant state-court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018) (citing 28 U.S.C. § 2254(d)). Petitioner's remaining claims were adjudicated on the merits in state court. As such, it is well-settled that "when the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion[,] a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Id.* "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). Petitioner bears the burden of proof under § 2254(d). *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

Because Petitioner is *pro se*, the Court liberally construes his filings, but will not act as an advocate. *James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013).

## II.   BACKGROUND

### A.  State Proceedings.

In 2004, Petitioner and a group of friends went to a high school party they were not invited to attend. The party's host asked Petitioner to leave. Petitioner responded by slapping the host in the face. "[Petitioner] then pulled a handgun out of the waistband of his pants and waved it at the host's friends, turned, and ran out the front door." (Doc. # 7-4 at 2). The host and his friends pursued Petitioner—and Petitioner's cousin, Dominic

2

Duran—into the front yard as they ran to their car. (*Id.*). While being pursued, Petitioner

turned and fired five shots from a handgun towards the house. Petitioner got in the car

and put the gun down. Duran then "picked up the gun and fired five more shots at the

house while [Petitioner] drove away." (*Id.* at 3). A seventeen-year-old girl, M.K., was

seated on a couch inside the house. "She was struck with a bullet in the back of the

head and died the next morning. The evidence as to who fired the fatal shot was

inconclusive." (*Id.*).

Petitioner and Duran were tried jointly for first degree murder (extreme

indifference) of M.K.[1] (*Id.*). Petitioner "was convicted of attempted first degree murder

(extreme indifference), reckless manslaughter, criminally negligent homicide, and

accessory to crime." (*Id.*). The trial court sentenced him to "forty-eight years in the

Department of Corrections for attempted first degree murder (extreme indifference), six

years for reckless manslaughter, three years for criminally negligent homicide – both to

be served concurrently with the attempted murder sentence – and six years for

accessory to crime, to be served consecutively to the other convictions." (*Id.*).

***Montoya I*—Direct Appeal and Review by the CSC.** Petitioner filed a direct

appeal in the Colorado Court of Appeals (CCA) to challenge the convictions and

sentences. On appeal, his counsel raised four issues: "(1) statements made by the

prosecutor during closing arguments elevated the lesser included crime of attempted

murder to a separate offense not charged by the grand jury; (2) the trial court erred in

---

[1] Petitioner was also indicted and tried for attempted first-degree murder (extreme indifference) of a second victim, E.C., who stood in the doorway of the house as Petitioner fired shots from the handgun. One of the bullets grazed E.C.'s face, but did not cause his death. The jury acquitted Petitioner of the count related to E.C.

failing to instruct the jury that it must find defendant knowingly caused the death of M.K. in the first degree murder (extreme indifference) jury instruction and in failing to provide a tendered universal malice instruction; (3) the trial court erred in failing to instruct the jury on the burden of proof and the use of ordinary force in self-defense, as well as failing to provide tendered instructions on multiple assailants and apparent necessity; and (4) insufficient evidence exists to convict him of the crime of accessory to crime." (Doc. # 7-2 at 5). The CCA affirmed Petitioner's accessory conviction, but reversed all other convictions, concluding "the trial court abused its discretion in denying defendant's tendered multiple assailants instruction[.]" (*Id.*). The Colorado Supreme Court (CSC) granted a writ of certiorari, vacated the CCA's judgment in *Montoya I*, and remanded the case to the CCA for reconsideration in light of a recent decision in another case which the CSC decided after the CCA resolved *Montoya I*. (Doc. # 7-3 at 1).

  ***Montoya II*—Direct Appeal After Remand.** On remand, the CCA reconsidered Petitioner's claimed errors. (Doc. # 7-4 at 3-4). This time, though, the CCA rejected Petitioner's ascribed errors, affirming each conviction and sentence. (*See* Doc. # 7-4). The CSC then partially granted a petition for a writ of certiorari, and affirmed the CCA's decision. (*See* Doc. # 7-5).

  **Postconviction Proceedings.** After the convictions were affirmed on direct appeal, Petitioner sought postconviction relief under Colo. R. Crim. P. 35(c). Petitioner argued that "appellate counsel was ineffective for failing to argue that the trial court erred by instructing the jury on completed and attempted reckless manslaughter as nonincluded offenses of completed and attempted extreme indifference murder[]; and that had counsel raised that argument, the result of the appeal would have been

different." (Doc. # 7-8 at 4). The CCA denied the ineffective-assistance-of-appellate-counsel claim, affirming the trial court's denial of postconviction relief. The CSC denied certiorari on June 1, 2021. (Doc. # 7-8; Doc. # 7-9).

**B. Federal Habeas Proceedings.**

After the state proceedings, Petitioner initiated this habeas corpus action under 28 U.S.C. § 2254. (Doc. # 1). Three claims have navigated the procedural prerequisites imposed by AEDPA, and stand ready to be reviewed on the merits:

1. That the prosecutor's closing arguments constructively amended the indictment against Petitioner in violation of the 5th, 6th, and 14th Amendments (*id.* at 4-9);

2. That the trial court erred by omitting the burden of proof and definition of "ordinary force" from the self-defense instruction given to the jury in violation of the 5th, 6th, and 14th Amendments (*id.* at 9-12); and

3(b). That appellate counsel was ineffective for failing to challenge the trial court's erroneous jury instruction that attempted reckless manslaughter is a lesser nonincluded offense of attempted extreme indifference murder (*id.* at 13-15).

As relief, Petitioner asks the Court to grant the writ of habeas corpus. (*Id.* at 25).

In their *Answer*, Respondents contend the CCA's resolution of each claim was not contrary to, or an unreasonable application of, clearly established federal law—barring habeas relief under § 2254(d)(1). (*See* Doc. # 21). Nor were the CCA's factual findings unreasonable, making relief unavailable under § 2254(d)(2). (*Id.*). In *Petitioner's Traverse Brief*, Petitioner maintains the state criminal proceedings violated his

5

constitutional rights, requiring habeas relief. (*See* Doc. # 23). The Court will now discuss each claim.

## III.   DISCUSSION

### A.  Claim 1: The prosecutor's closing arguments.

Petitioner first claims that the prosecutor's closing arguments to the jury constructively amended the indictment. (Doc. # 1 at 4-9; Doc. # 23 at 1-9). According to Petitioner, the original indictment charged him only with first-degree murder (extreme indifference) of M.K., not *attempted* first-degree murder (extreme indifference) of M.K.— thus, the prosecutor's arguments improperly added a charge without notice in violation of due process.[2] (*Id.*). Respondents counter that AEDPA bars relief because the CCA's denial of this claim involved only a matter of Colorado criminal law which binds this Court, the decision did not contradict federal law, nor did the CCA base its decision on an unreasonable determination of the facts. (Doc. # 21 at 9-12). The Court will recount why the CCA denied the claim, and then address whether § 2254 provides any basis for habeas relief.

### 1.   CCA's denial of the claim.

The CCA recounted the arguments made by the prosecutor that Petitioner takes issue with:

---

[2] In his traverse, Petitioner adds that he could not have been guilty of attempted first-degree murder (extreme indifference) of M.K. "where the petitioner has [actually] caused the death of a person." (Doc. # 23 at 6). Such a claim must be denied because it was not exhausted in state court and fails on the merits. "Factual or legal impossibility of committing the offense is not a defense if the offense could have been committed had the attendant circumstances been as the actor believed them to be, **nor is it a defense that the crime attempted was actually perpetrated by the accused**." Colo. Rev. Stat. § 18-2-101(1)(2004) (emphasis added); *see also* Wayne R. LaFave, 2 Subst. Crim. L. (3d ed.) § 11.5 ("Although the crime of attempt is sometimes defined as if failure were an essential element, the modern view is that a defendant may be convicted on a charge of attempt even if it is shown that the crime was completed.").

[I] suggest that you look at the elements of the crime of criminal attempt to commit first-degree murder. Those elements are that the defendant, in the state of Colorado, knowingly – and then this is the one you will see that matters – quote, engaged in conduct constituting a substantial step toward the commission of the offense of first-degree murder.

And then the instruction defines for you a substantial step. It says: A substantial step is any conduct, whether act, omission, or possession, which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense.

I read you that instruction because one way of looking at the case is to realize at a minimum the evidence shows that both of those defendants committed the crime of attempted murder of [M.K.] because they both engaged in a substantial step toward the commission of the crime of first-degree murder. They did that because they both shot into [the] house at a time when [M.K.] was still alive, and that fits the definition of "substantial step."

If you accept that as sort of a baseline here, that the evidence has shown the commission of the crime of attempted first-degree murder, then I suggest you ask yourself whether the evidence is sufficient to prove who fired the fatal shot. And then regardless of who fired the fatal shot, I suggest that you look at the complicity instruction and decide whether each of those men were [sic] a complicitor to the acts of the other.

(Doc. # 7-4 at 5-6, n.1). The CCA then rejected Petitioner's challenge. It explained that, under Colorado law, a criminal defendant has notice of lesser included offenses as a matter of law. (*Id.* at 5-6 (citing Colo. Rev. Stat. § 18-1-408(5)(b))). And "attempted first degree murder (extreme indifference) is a lesser included offense of first degree murder (extreme indifference) for which the grand jury indicted defendant." (*Id.*). "Therefore, the charges against defendant properly included attempted first degree murder (extreme indifference) and any statements made by the prosecutor to that effect did not create a new and separate charge against defendant." (*Id.* at 5).

2. *Application of § 2254.*

7

There is no basis for habeas relief on this claim. To start, the CCA's resolution of the claim rests on matters of state law: Colorado criminal law, by statute, puts defendants on notice that they may be convicted of lesser included offenses, and attempted first-degree murder (extreme indifference) is a lesser included offense of first-degree murder (extreme indifference) for which the grand jury indicted defendant. Even if Petitioner is arguing that the CCA erred in its interpretation of state law, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). As Respondents maintain, state-court decisions that rest on matters of state law—including a state court's reading of its own criminal law—are binding on a federal court. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam); *Chapman v. LeMaster*, 302 F.3d 1189, 1196 (10th Cir. 2002) (explaining that matters of state law are binding on a federal habeas court). Because the prosecutor's arguments were not improper under state law (or any other law cited by Petitioner), they did not render the trial "fundamentally unfair" or infect "the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).

Moreover, under federal law "[t]he crime of attempt is a lesser included offense of the substantive crime." *United States v. Remigio*, 767 F.2d 730, 733 (10th Cir. 1985); *United States v. Coyazo*, 95 F. App'x 261, 265 (10th Cir. 2004) ("the fact that the government presented evidence of attempted robbery rather than robbery does not

establish that it constructively amended the indictment."). Thus, Petitioner's first claim fails under federal law too.

Petitioner does not demonstrate any way the state court's determination was contrary to, or an unreasonable application of, clearly established federal law under § 2254(d)(1). Nor does petitioner argue that the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented. Habeas relief is therefore not available.

### B.  Claim 2: Jury Instructions.

Petitioner next finds error in the trial court's instructions to the jury. Specifically, he argues that the court erred by omitting the burden of proof and definition of "ordinary force" from the self-defense instruction given to the jury in violation of the 5th, 6th, and 14th Amendments. (Doc. # 1 at 9-12). The Court will summarize the CCA's resolution, and then discuss whether Petitioner has met the requirements for relief under § 2254.

### 1.  CCA's resolution.

The CCA reviewed this claim for plain error, but found none. (Doc. # 7-4 at 15-18). Its decision hinged on two conclusions of state criminal law: (1) because extreme indifference murder requires a mental state of recklessness, criminal negligence, or extreme indifference, self-defense is not an affirmative defense, but rather an element-negating traverse to be considered by the jury in determining whether the prosecution had met its burden; and (2) there was no evidence presented to suggest Petitioner had employed "ordinary force" in defending himself because he used a firearm, which Colorado designates as a deadly weapon, so there was no reason for the trial court to

define "ordinary force" for the jury. (Doc. # 7-4 at 15-28). Based on these conclusions, the CCA rejected both challenges to the jury instructions. (*Id.* at 18-28).

   2. *Application of § 2254.*

Respondents insist that no basis for habeas relief has been shown because the claim depends on the CCA's reading of Colorado criminal law that binds this Court on federal habeas review. (Doc. # 21 at 16-17). Additionally, Respondents argue that the requirements for habeas relief have not been shown under § 2254(d)(1) or (2). (*Id.* at 17). The Court agrees.

The Due Process Clause of the Fourteenth Amendment requires the prosecution to prove every element of a charged offense beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 364 (1970). A constitutional challenge to jury instructions requires a habeas petitioner to show a reasonable likelihood that the jury applied the instructions in a way that relieved the state of its burden of proving every element of the crime beyond a reasonable doubt. *See Waddington v. Sarausad*, 555 U.S. 179, 190-91 (2009); s*ee also Victor v. Nebraska*, 511 U.S. 1, 6 (1994) (the pertinent constitutional question "is whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the *Winship* standard."). "[I]t is not enough that there is some 'slight *possibility*' that the jury misapplied the instruction." *Waddington*, 555 U.S. at 191 (quoting *Weeks v. Angelone*, 528 U.S. 225, 236 (2000)). Furthermore, a challenged instruction may not be considered in artificial isolation; rather, it must be considered in the context of the instructions as a whole and the trial record. *See Estelle*, 502 U.S. at 72.

To the extent Petitioner argues that the CCA misapplied Colorado's self-defense law, the Court reiterates that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 67-68. Moreover, Petitioner does not explain how the CCA's decision contradicted a binding Supreme Court case, or was based on an unreasonable determination of the facts. To the contrary, the state-court record supports the CCA's conclusion that Petitioner used deadly force insofar as he acted in self-defense by shooting towards his pursuers. (*See* Doc. # 22, Trial Transcripts). He certainly does not present "clear and convincing" evidence to establish that he used ordinary force. Therefore, habeas relief will be denied.

### C. Claim 3(b): Ineffective assistance of appellate counsel.

Petitioner's final claim alleges that appellate counsel was constitutionally ineffective for failing to challenge the trial court's erroneous jury instruction that attempted reckless manslaughter is a lesser nonincluded offense of attempted extreme indifference murder. (Doc. # 1 at 13-15). The Court will set forth the CCA's decision, and then discuss whether habeas relief is warranted.

#### 1. CCA's decision.

In rejecting this ineffective-assistance-of-appellate-counsel claim, the CCA found that neither deficient performance nor prejudice had been established under *Strickland*:

> Montoya contends that his appellate counsel provided ineffective assistance because she did not argue in his direct appeal the jury instruction error that his cousin successfully raised in his direct appeal, and that had she argued that instructional error, his conviction for attempted extreme indifference murder would have been reversed on appeal.

> The instructional error Montoya refers to is that the trial court instructed the

11

jury that attempted reckless manslaughter is a lesser nonincluded offense of attempted extreme indifference murder, when it is actually a lesser included offense, and that error allowed the jury to convict him of both the greater and lesser offenses.

Based on the unique facts of this case, we conclude that Montoya's allegations fail to establish either that appellate counsel's performance was deficient or that he was prejudiced by the allegedly deficient performance.

With regard to deficient performance, we note that the record does not support the conclusion that the omitted argument was better than the argument appellate counsel raised. Indeed, Montoya's ineffective assistance argument ignores the fact that his appellate attorney was initially successful in getting his homicide convictions reversed in *Montoya I. See Long*, 126 P.3d at 286.

"In reviewing any potential deficiency in counsel's performance, we must make 'every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *People v. Terry*, 2019 COA 9, ¶ 25 (quoting *Dunlap*, 173 P.3d at 1062-63). Therefore, the fact that the *Montoya I* decision was ultimately reversed based on the supreme court's later decision in *Riley* does not render counsel's performance deficient because whether an attorney's performance is deficient is judged based on counsel's perspective at the time. *See id.* And, at the time of Montoya's direct appeal, counsel's argument that resulted in the reversal of his convictions was based on existing case law that was not overturned until after the *Montoya I* opinion was announced. *See Montoya II*; *see also Riley*; *People v. Pickering*, 276 P.3d 553, 557 (Colo. 2011).

Further, as discussed in more detail below, Montoya and Duran displayed different levels of culpability for the shooting such that there is not a reasonable probability that the instructional error argument would have prevailed on direct appeal.

We also conclude that Montoya failed to allege sufficient facts to establish that he was prejudiced by counsel's allegedly deficient performance. That is, he did not establish that, if the omitted claim had been raised, he would have prevailed on appeal. *See Smith*, 528 U.S. at 285-86.

Because the error Montoya refers to was not objected to at trial, it would only require reversal on direct appeal if the error was plain. *People v. Rediger*, 2018 CO 32, ¶ 33. Plain error is error that is both obvious and substantial. *Id.* at ¶ 48. An error is substantial if it so undermines the fundamental fairness of the trial itself as to cast serious doubt on the

reliability of the judgment of conviction. *Id*. at ¶ 52.

As described in *Montoya III*, ¶ 4, the evidence at trial established the following:

- Montoya and Duran were attending a party.
- At some point after they were told to leave, a fight erupted, guns were produced, and Montoya and Duran were chased from the house.
- While running for Duran's car, Montoya fired a number of rounds from a nine-millimeter Glock semi-automatic handgun.
- While Montoya drove the car away, Duran fired more rounds toward the house from the same handgun.
- The crime scene evidence indicated that, of the ten shots fired from the Glock, one penetrated a bedroom window in the house striking and killing a young woman.

The division also reasoned that "there was an abundance of evidence from which the jury could find that Montoya was accountable for the commission of attempted extreme indifference murder," and that "there was arguably sufficient evidence for the jury to have found Montoya guilty of extreme indifference murder itself, either because it was one of the rounds actually fired by him that struck the victim or because he was complicit in the commission of the killing committed by his cousin[.]" *Id*. at ¶¶ 20-21.

In contrast, the division in *Duran* found that the evidence presented was insufficient to support Duran's conviction for reckless manslaughter because the evidence showed the victim was fatally shot by a bullet from the first group of gunshots that Montoya fired, and there was no evidence to show that Duran aided, abetted, advised, or encouraged Montoya in firing those shots. *Duran*, 272 P.3d at 1092-93.

Further, with regard to the jury instructions for reckless manslaughter and attempted reckless manslaughter, the *Duran* division found that because attempted reckless manslaughter is a lesser include[d] offense of attempted extreme indifference murder, the instructions erroneously instructed the jury that it could convict Duran of both the greater offense (attempted extreme indifference murder) and the lesser included offense (attempted reckless manslaughter). It also concluded that the instructional error constituted plain error because it was both obvious and affected Duran's substantial rights.

Notably, the *Duran* division found that the error affected Duran's substantial rights because there was a reasonable possibility that had the jury been "instructed that it could find defendant guilty of only one of the two attempt crimes, instead of being instructed that it must consider them separately, . . . it would have chosen the lesser included offense of attempted reckless

manslaughter." *Id.* at 1097. The division based that conclusion on its belief that the jury's guilty verdict for the completed crime of reckless manslaughter demonstrated a belief that Duran undertook at least some actions with the lesser degree of culpability. *Id.*

Montoya points to the division's analysis in *Duran* and argues that had the jury been properly instructed that attempted reckless manslaughter is a lesser included offense of attempted extreme indifference murder in his case, there is a reasonable probability the jury would have convicted him of attempted reckless manslaughter instead of attempted extreme indifference murder because the jury's verdict indicates it found him less culpable. We disagree.

While we agree that the trial court erred by instructing the jury that attempted reckless manslaughter is a lesser nonincluded offense of attempted extreme indifference murder, given the facts surrounding Montoya's involvement in the shooting, we conclude that, even if appellate counsel had raised the erroneous instruction claim, there is not a reasonable probability that Montoya would have succeeded in having his convictions reversed on appeal.

Unlike Duran's case, there was "an abundance of evidence" for the jury to find Montoya guilty of attempted extreme indifference murder. *Montoya III*, ¶ 20. And, further distinguishing Montoya's case from Duran's, there was "arguably sufficient evidence for the jury to have found Montoya guilty of extreme indifference murder itself." *Id.* at ¶ 21.

Thus, unlike the division's conclusion in *Duran*, 272 P.3d at 1097, given Montoya's culpability in the incident, we conclude that there is not a reasonable possibility that the jury would have chosen to convict Montoya of attempted reckless manslaughter even if it had been correctly instructed that attempted reckless manslaughter is a lesser included offense of attempted extreme indifference murder. Consequently, because there is not a reasonable probability that Montoya would have prevailed on appeal even if the omitted claim had been raised, we perceive no prejudice from counsel's alleged deficient performance.

Because the record establishes that Montoya's allegations would fail to establish either deficient performance or prejudice, the district court did not err by denying his postconviction motion without a hearing. *See Chavez-Torres*, ¶ 31.

(Doc. # 7-8 at 8-15).

    2.  *Application of § 2254.*

Respondents contend the CCA applied *Strickland* in a reasoned manner, so habeas relief is unavailable under § 2254(d)(1). (Doc. # 21 at 22-24). The Court agrees.

Petitioner's application and traverse continue to take issue with counsel's failure to press a specific issue on appeal. But counsel's underlying performance is not the question before this Court. "The pivotal question [on federal habeas review] is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Richter*, 562 U.S. at 101. To obtain habeas relief, Petitioner must show that the CCA's denial of the claim was contrary to, or an unreasonable application of, clearly established federal law under § 2254(d)(1). Petitioner does not establish that the CCA arrived at a conclusion opposite to the Supreme Court on a question of law, or that the CCA confronted a materially indistinguishable Supreme Court decision that would compel a different result. *See Williams v. Taylor*, 529 U.S. 362, 405 (2000). Instead, the CCA applied settled federal law in a thorough and well-reasoned opinion. It was not unreasonable to conclude that Petitioner failed to establish deficient performance (appellate counsel initially obtained a reversal) or prejudice (there was an abundance of evidence to find Petitioner guilty of attempted extreme indifference murder).

Given these circumstances, the CCA's rejection of this claim was not contrary to, or an unreasonable application of, federal law. Nor does Petitioner claim the decision was based on an unreasonable determination of the facts in light of the evidence presented. As such, habeas relief is not available.

## IV.    CONCLUSION

All told, Petitioner points to nothing from the state-court proceedings that qualifies as the sort of extreme malfunction in the state criminal justice system that § 2254 guards against. *See Richter*, 562 U.S. at 102.

The Court therefore

**ORDERS** that the *Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254* (Doc. # 1) be DENIED and this case DISMISSED WITH PREJUDICE; and

**FURTHER ORDERS** that there is no basis on which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c).

DATED: December 15, 2021.

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge

16